```
------------------------------------------------------------ X
```
In the Matter of the Arbitration

   -between-


| | |
|---|---|
| CARGILL INCORPORATED, OCEAN TRANSPORTATION, as Owner | Final Award<br>November 11, 2020 |

   -and-

TRIORIENT LLC, as Charterer

under a Charter Party dated February 10, 2020

```
------------------------------------------------------------ X
```
Before:

David W. Martowski
Bengt E. Nergaard
Louis Epstein, Chair

# INTRODUCTION

In this arbitration, Cargill Incorporated, Ocean Transportation ("Cargill" or "Owner") claims demurrage and damages in the amount of $1,470,052.78 arising out of the alleged breach by Triorient LLC ("Triorient" or "Charterer") of a charter party dated February 10, 2020 for the MV Josco Huizhou to carry a cargo of iron ore concentrate from Topolobambo, Mexico to China (the "Charter").

Although the charter provisions, relevant facts and proceedings are summarized in the Partial Final Award, we set them out again here in somewhat greater detail in order to ensure that this Final Award is comprehensive and complete

# CHARTER PROVISIONS

The Charter consists of a fixture recap email which sets forth the main terms of charter, including the following:

  MIN 54,000 MAX 57500 MT 00 OF IRON ORE CONCENTRATE….

  - LOAD: 1SP 1SB TOPOLOBAMBO - 12,000 SHINC PWWD (BSS
  DRAFT 12.5M WOG)

- DISCHARGE: 1SP 1/2SB(S) ZHOUSAN PORT (FOR LIGHTENING PURPOSES IF NEEDED) AND ZHENJIANG PORT, or YANGJIANG or LIANYUNGANG - 15,000 SHINC PWWD

- LAYCAN 6/13 MARCH, 2020 (0001/2359 LT)

- DEMURRAGE - $16,000 HDLTSBENDS

- FREIGHT
-23.10 PMT BSS ZHOUSAHN PORT (FOR LIGHTENING PURPOSES IF NEEDED) AND ZHENJIANG (discharging / lightering operation for both ports are for receivers responsibility/account owners to pay for port DA at both ports)
-23USD PMT BSS YANGJIANG (basis 12.80m draft at disport wog)
-21.65USD PMT BSS LIANYUNGANG

* * *

TTL COMMISSIONS: 3,.75% ADD + 1.25% SSY USA TO BE PAID BY OWNERS

The fixture recap further provided:

ALL OTHER TERMS AND CONDITIONS AS PER CHARTS EXECUTED CP ATTACHED *(MV NAVIOS LA PAIX 3 DEC, 2018) WITH LOGICAL MT ALTERATIONS.

The referenced charterparty was an amended C.(Ore) 7 form which incorporated 22 pages of rider clauses. Rider Clause 32 entitled "US Law/New York arbitration to apply," provided in pertinent part:

Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York before a panel of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. The arbitration shall be conducted pursuant to the Rules of the Society of Maritime Arbitrators of New York currently in effect. The applicable law shall be the general maritime law of the United States. Either party hereto may call for such arbitration by service upon the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further

notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party.... Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

Rider Clause 73 entitled "Force Majeure" provided as follows:

A. Neither the vessel, the Master, Carrier nor Charterer shall, unless otherwise in this contract expressly provided, be responsible for any loss or damage or delay or failure in performing hereunder, arising or resulting from economies of mine, government intervention, technical problems, Act of God, act of war, insurrection, riot, embargo, perils of the sea, fire, explosions earthquake, storm, tidal wave or similar disturbance, shoaling or river, ports or seabed, flood, drought, sudden loss of draft or governmental draft restriction, act of public enemies, pirates or assailing thieves, arrest or restraints of princes, rulers or people or seizure under legal process (provided bond is promptly furnished to release the vessel or cargo); breakdown of machinery or facilities on board any vessel; breakdown of shore machinery or facility including shore loading and discharging equipment for more than five (5) days; transportation or handling difficulties; strike, lockout, combination of workmen, stoppage or restraint of labor from whatever cause, either partial or general; law, act, order, proclamation, decree, regulation, ordinance, instruction or request of government or other public authorities, federal, state, local or foreign; judgment or decree of a court of competent jurisdiction; delay or failure of usual carriers or contractors, or suppliers of cargo, at any time or business curtailment, labor shortage or inability to obtain raw materials including cargo, operating materials, plant equipment or materials required for maintenance or repairs; any contingency or delay or failure or cause of any nature beyond the reasonable control of Charterer or of Carrier, whether or not of the kind herein above specified (any such contingency, delay or failure being hereinafter called "Force Majeure"), preventing, hindering or delaying Charterer from loading and shipping or Carrier from transporting the cargo referred to herein. Prompt written notice to the other party shall be given by the party affected by such Force Majeure. Any party invoking Force Majeure pursuant to this Clause, shall, upon termination of such Force Majeure, give prompt notice thereof to the other party.

B. Carrier shall not be required to order a nominated vessel to proceed to a designated loading port on any voyage if at the time the vessel would arrive at such port either the port or ports of loading or the port or ports of discharging are subject to a Force Majeure, as defined above, which the

parties estimate would prevent either Charterer or Carrier from performing hereunder for a period of more than five (5) days. In such event, Carrier or Charterer may cancel the particular voyage unless Charterer declares that time will count as if there were no Force Majeure. In the event of a cancellation pursuant to this paragraph, Charterer shall have the right to designate substitute loading dates for the cargo when the Force Majeure has ended and Carrier will use its best efforts to meet such substitute loading dates. In the event of a Force Majeure occurring after a part cargo has been loaded, unless Charterer declares that time shall count as if there were no Force Majeure, Carrier may proceed with same and shall have the liberty to complete with other cargo and Charterer shall pay freight on the transported quantity only.

C. Laytime shall be suspended and demurrage shall not accrue during any delays in loading or discharging due to Force Majeure as defined above.

\* \* \*
## PROCEEDINGS

By letter dated July 29, 2020, Mahoney & Keane, counsel for Cargill, commenced arbitration against Triorient, appointing Mr. Martowski and calling upon Triorient to appoint its arbitrator within 20 days. (The letter was sent by Federal Express on July 29, 2020 and delivered to Triorient at its office in Darien, CT on August 4, 2020.)

Triorient failed to appoint an arbitrator within 20 days and on August 31, 2020, Cargill exercised its right to appoint Mr. Nergaard on Triorient's behalf. On the same day, Mr. Epstein was appointed as Chair of the Panel. On August 31, 2020, all three arbitrators made their respective disclosures.

No counsel or other party representative has appeared for Triorient in this arbitration. By email on August 31, 2020, George Chalos Esq of Chalos & Co, PC advised that "[a]lthough we were engaged to seek additional time for Triorient to appoint an arbitrator in this matter, we were not engaged to represent its interests with respect to the merits of the claim. Mr. Chalos requested that "all comm[unication]s for Triorient should be sent directly to them. Thereafter, communications were sent to Albert Winslow and Facundo Santucci, whom, we are informed, are the principals of Triorient, with copies to Simpson Spence Young, Triorient's ship broker.

On September 24, 2020, Cargill submitted a "Motion for Security and Final Award on Default" together with supporting documentation (Exhibits 1-5) seeking (a) pre-award security for its claim under Section 30 of the SMA Rules; and (b) a final award "on default" for the full amount of its claim.

On October 5, 2020, the Panel issued a Partial Final Award (SMA Award No. 4405) requiring Triorient to establish security of $1,600,000. The Partial Final Award also required Cargill to submit by October 9, 2020, copies of correspondence it received from

Triorient concerning the reasons for Triorient's failure to provide the cargo. On October 9, 2020, Cargill submitted as Exhibits 7-9 copies of such correspondence

In the Partial Final Award, the Panel extended until October 16, 2020 the deadline for Triorient to serve defense submissions, if any. Triorient failed to serve any defense submissions. On October 23, 2020, the Panel advised the parties of its intention to proceed to its final award based on the documents submitted.

## SUMMARY OF FACTS

In support of its Motion for Security and Final Award on Default, Cargill submitted the declaration of Jan-Willem van den Dijssel of its Ocean Transportation division together with supporting documents (Exhibits 1-5). The facts as set forth therein are as follows:

a. The vessel arrived and tendered its notice of readiness at Topolobambo on March 3, 2020 and retendered on March 6, 2020;
b. On May 11, 2020, Cargill requested that Triorient urgently advise as to when a cargo would be supplied, observing that the vessel had been waiting since March 3, and, among other things, reserving the right to declare Triorient in repudiatory breach.
c. Triorient failed to provide any satisfactory response to Cargill's request;
d. Accordingly, on May 18, 2020, Cargill notified Triorient that it was terminating the Charter effective immediately based on Triorient's breach and repudiation.
e. On June 30, 2020, Cargill submitted to Triorient through its broker a demand, together with supporting documents, for $1,450,052.78 in compensation including:
   - demurrage of $1,111,977.78 for 74.27361 days from the vessel's arrival on March 3, 2020 to the date it sailed on May 19, 2020;
   - alleged loss of earnings of $318,200 on a substitute fixture; and,
   - underwater cleaning costs of $39,875 allegedly incurred because of fouling of the vessel's hull as a result of the long wait at Topolobambo
f. Cargill demanded payment by July 10, 2020 but no payment was received.

## DISCUSSION AND DECISION

At the direction of the Tribunal, Cargill submitted correspondence between the parties regarding the reasons given by Triorient for its failure to provide the cargo (Exhibits 7-9). In emails dated April 3 and 6, 2020 (Exhibit 9), Al Winslow of Triorient alluded to what he described as "force majeure situations." These allegedly included: (a) a February 24, 2020 hacking of the server of the Department of Commerce which had already ended but which, Triorient asserted, had delayed and was still delaying the issuance of export permits; and (b) COVID 19, which, according to Triorient, led the government to issue a declaration that, from March 30, 2020 onward, limited or stopped mining and also limited production at a concentration plant. (We express no view as to whether these emails, sent after the vessel had been waiting at the loadport for one month, satisfied the "prompt written notice" requirement of Clause 73A.)

5

If Triorient had participated in the arbitration and asserted a force majeure defense, it would, under New York law, have had a heavy burden of proof. Among other things, it would have had to prove by a preponderance of the evidence that the alleged force majeure events actually occurred and that Triorient's failure to perform arose or resulted from those events. In fact, Triorient chose not to participate and did not submit any evidence regarding these matters. In the circumstances, the attribution of Triorient's breach to events of force majeure would be mere speculation and guesswork in which it would be inappropriate for the Panel to engage.

Based on its submissions and the additional documents submitted on October 9, 2020, Cargill has established its claim. It is evident that Triorient materially breached its obligation under the Charter to provide a cargo for the MV Josco Huizhou and that, after waiting more than two months at the loadport, Cargill was fully justified in terminating the charter based on that breach. Cargill has provided in this arbitration full and satisfactory documentation of each element of its claim. As noted above, despite having notice of this arbitration and an opportunity to respond at each stage of these proceedings, Triorient has failed to appear and has failed to dispute Cargill's claim or to assert any defense.

Cargill claims demurrage in the amount of $1,111,977.78. However, Cargill has neglected to deduct from the claimed amount the 5% in commissions which would have been due to Triorient (3.25% address commission) and to the broker (1.75% brokerage commission) under the charter. Subtracting the amount of the commissions ($55,598.89) reduces the demurrage owed to $1,056,378.89

In addition to demurrage, Cargill is entitled to recover damages for the loss of anticipated profit on the voyage. As a measure of these damages, Cargill postulates, as a market rate, the income it received on a subsequent fixture. Cargill earned $8,759 per day on that fixture, $7,391 less than the $16,150 per day that would have been realized under the 43 day Triorient charter, resulting in a loss of earnings in the amount of $317,813. Based on the documents submitted and in the absence of any evidence to the contrary, we accept that the calculation of damages for lost earnings should be made on this basis.

Finally, as a result of the long delay waiting for the cargo at Topolobambo, the vessel's hull became fouled, requiring underwater hull cleaning at a cost of $39,875. Cargill has submitted an itemized invoice for the work performed. We accept Cargill's calculation of this element of damages.

Accordingly, the Panel unanimously awards to Cargill $1,414,066.89 in damages together with interest, attorneys' fees (which, based on the Fee Declaration of Edward A. Keane, Esq. dated November 9, 2020, we find to be reasonable ) and arbitrators' fees as summarized below.

# AWARD

Cargill is awarded damages from Triorient in the principal amount of $1,414,066.89 (consisting of demurrage, loss of earnings and hull cleaning costs) plus interest, attorneys' fees and arbitrators' fees, all itemized as follows:

| Demurrage | $1,056,378.89 |
|---|---|
| Loss of earnings | $317,813.00 |
| Hull cleaning costs | $39,875.00 |
| **Subtotal** | $1,414,066.89 |
| Interest @ 9% per annum on $1,414,066.89 from 7/10 – 11/11/2020 | $43,235.58 |
| Attorneys' fees | $19,875.00 |
| Arbitrators' fees (to be paid by Cargill in the first instance) | $15,540.00 |
| **Total Amount Due** | **$1,492,717.47** |

If the above sum is not paid within 30 days from the date of this Award, interest on the total amount due, $1,492,717.47, shall resume at the rate of 9.00% per annum provided in CPLR § 5004 and continue until payment in full has been made or the Award is reduced to judgment, whichever first occurs.

The fees and expenses of the arbitrators, set out in Appendix A (not published) which is a part of this Award, are due and payable upon receipt of this Award by check to each arbitrator at the address indicated in Appendix A. Payment shall be made in the first instance by Cargill.

This award may be confirmed and judgment entered upon it in any court having jurisdiction.

New York, New York
November 11, 2020

David W. Martowski

Bengt E. Nergaard

Louis Epstein, Chair

7

# APPENDIX A – Arbitrator's Fees

Please remit by check to each arbitrator the following amounts at the mailing addresses indicated. Payment shall be made in the first instance by Cargill

| | |
|---|---:|
| David Martowski<br>Guest<br>c/o Huckleberry Cottage<br>Mohonk Mountain House<br>1000 Mountain Rest Road, New Paltz, NY 12561. | $3,800 |
| Bengt Nergaard<br>507 Westover Rd.<br>Stamford, Ct 06902 | $4,300 |
| Louis Epstein<br>100 Riverside Drive, Apartment 9C<br>New York, NY 10024 | $7,440 |
| **Total** | **$15,540.00** |